IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **RODNEY LEE RODIS,** | ) | Civil Action No. 7:11-cv-00544 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **ATTORNEY GENERAL OF** | ) | |
| **VIRGINIA, et al.,** | ) | By:   Hon. Michael F. Urbanski |
| Respondents. | ) | United States District Judge |

Rodney Lee Rodis filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, while he was completing a federal sentence in a federal correctional facility. Petitioner filed the § 2254 petition to challenge his future incarceration pursuant to a criminal judgment entered by the Circuit Court of Louisa County, Virginia. Respondents, the Attorney General of Virginia and the Warden of the Federal Correctional Institution ("FCI") in Butner, North Carolina, filed a motion to dismiss the petition. The time for petitioner to respond to the motion expired, and the matter is now ripe for disposition. After reviewing the record, the court grants respondents' motion to dismiss and dismisses the petition.

I.

The Circuit Court of Louisa County entered petitioner's criminal judgment on January 14, 2009, for ten counts of embezzlement. Petitioner, "a Roman Catholic priest, was the pastor of two Catholic parishes in Louisa County, within the jurisdiction of the Catholic Diocese of Richmond. Beginning in approximately 1995, [petitioner] established a scheme to divert funds contributed to the two parishes to his personal use." Rodis v. Commonwealth, No. 0162-09-2, slip op. at 2 (Va. Ct. App. Sept. 29, 2009). The Circuit Court sentenced petitioner to 200 years' imprisonment but suspended 187 years.

Petitioner appealed to the Court of Appeals of Virginia, arguing the following four issues. First, the trial court should have granted his motion to dismiss the prosecution as a violation of the First Amendment and the separation of church and state. Second, Virginia Code § 19.2-294 barred petitioner's state prosecution because of his prior federal conviction for the same criminal acts. Third, the trial court should have stricken the incriminating evidence because of misidentification of the victim and because the Catholic Diocese of Richmond was not his employer. Fourth, the trial court should have dismissed nine of the ten counts pursuant to a "single larceny" theory of one criminal scheme. The Court of Appeals of Virginia affirmed petitioner's convictions and specifically denied the First Amendment claim because the United States Supreme Court case law that petitioner cited did not apply to petitioner's criminal action.

Petitioner appealed to the Supreme Court of Virginia, raising the same issues, and on November 17, 2010, the Supreme Court of Virginia refused petitioner's appeal. Petitioner did not appeal to the Supreme Court of the United States, and he has not filed a state habeas petition.

Petitioner timely filed the instant federal habeas petition on September 20, 2011.[1] Petitioner raises two related challenges to his Virginia convictions: (1) the First Amendment precludes Virginia from interfering with an internal church matter; (2) Virginia courts lack jurisdiction to convict him of embezzlement because (a) handling of church monies is an internal ecclesiastical matter and (b) the Catholic Church and petitioner as a Catholic priest are not subject to Virginia law because the Catholic Church is a separate state. Respondents moved to

---

[1] September 20, 2011, is the date petitioner executed the petition and would be the earliest date he could have handed his petition to prison officials for mailing. See R. Gov. § 2254 Cases 3(d) (applying the prison-mailbox rule for § 2254 habeas petitions); Houston v. Lack, 487 U.S. 266, 275 (1988) (defining the prison-mailbox rule).

2

dismiss claims (1) as failing to state a claim and claim (2) challenging the jurisdiction of Virginia courts as procedurally defaulted.

## II.

### A.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."[2] 28 U.S.C. § 2254(a). After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudications of a claim is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. A Virginia court's findings cannot be deemed "contrary" merely because it does not cite established United States Supreme Court precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

---

[2] Any of petitioner's claims that rely on an interpretation of Virginia law is not eligible for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976) (holding that a determination of whether a state court is vested with jurisdiction under state law is a function of state courts and not federal courts).

A federal court may issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. This reasonableness standard is an objective one. Id. at 410.

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). See, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006). "A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. ___, 130 S. Ct. 841, 849 (2010). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

Petitioner argued on appeal that the Circuit Court could not convict him of embezzlement because only a "church or canon court" could adjudicate his conduct. Petitioner relied on the free exercise clause of the First Amendment and Watson v. Jones, 80 U.S. (13 Wall.) 679 (1871), as prohibiting Virginia courts from sentencing him. Petitioner argued that Virginia courts lacked jurisdiction to prosecute him because "superior ecclesiastical tribunals with a general and ultimate power of control more or less complete in some supreme judicatory over the whole membership of" Roman Catholic discipline, faith, custom, or law. See, e.g., Watson, 80 U.S. at 722-23. Petitioner explained Canon law, which is the code of the Roman Catholic Church, as giving a Roman Catholic bishop the right to intervene in a pastor's negligent administration of

4

parish funds. Petitioner concluded that the criminal allegations about whether he embezzled money from his parishes or the Roman Catholic Diocese of Richmond could not be resolved without interpreting and applying Canon Law, a task not permitted for secular courts because of the First Amendment.

The Court of Appeals considered and rejected this argument, and petitioner appealed to the Supreme Court of Virginia. The Court of Appeals denied the claim because the United States Supreme Court cases petitioner relied on, which were civil actions often involving church property, did not relate to or control the outcome of petitioner's criminal action. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that a federal court can rely on a reasoned state court judgment when later unexplained state court orders uphold that judgment).

The state court's adjudication of petitioner's First Amendment claim is not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. The First Amendment to the Constitution of the United States provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." This clause of the First Amendment applies to the States via the Fourteenth Amendment, and, thus, federal and state courts may not interfere in matters of church governance, faith, or doctrine. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). See Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 710 (1976); Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 449 (1969); Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U.S. 94, 116 (1952); Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 16-17 (1929); Watson, 80 U.S. (13 Wall.) at 727. The First Amendment protects religious-based conduct, but conduct related to religion remains

5

subject to the government's police power. See Cantwell, 310 U.S. at 303-04, 306 ("Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public."). See also Church of Lukumi Babalu Aye, Inc., 508 U.S. 520, 531 (1993) ("Our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."); Employment Div. v. Smith, 494 U.S. 872, 878-79 (1990) ("We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."), superseded by The Religious Freedom Restoration Act of 1993.

The facts establish why no analysis of Canon Law is necessary. The Court of Appeals of Virginia aptly summarized the facts as follows:

> Rodis was a Roman Catholic priest who served as pastor of two parishes in Louisa County from 1993 until 2006. In September 2002, Rodis began soliciting funds for various church purposes, which he converted to his own use.
>
> Rodis was indicted in federal court in August 2007 on eight counts of mail fraud, two counts of wire fraud, and three counts of money laundering. Pursuant to a plea agreement, Rodis pled guilty to one count of mail fraud and one count of money laundering, by order dated October 26, 2007.
>
> In May 2008, Rodis was indicted in circuit court on thirteen counts of embezzlement. Three counts were nolle prosequied before trial, and [Rodis] was convicted of ten counts of embezzlement.
>
> * * *
>
> The statement of facts stipulating the facts in the federal prosecution indicates Rodis opened an unauthorized bank account in September 1995, maintained sole control of a post office box beginning in 1998, and during the period from September 2002 through August 2006, he engaged in a scheme to defraud his parishioners by soliciting funds and depositing those funds in the account he maintained. Rodis also admitted diverting the funds to his personal use by wiring them to a personal bank account out of state.

6

> In the state prosecution, Rodis was convicted for ten counts of embezzlement covering ten different time periods. The earliest period began April 1, 2003 and the latest ended January 31, 2006.

Rodis v. Commonwealth, No. 0162-09-2, slip op. at 2, 4 (Va. Ct. App. May 11, 2010). See Jones v. Murray, 947 F.2d 1106, 1110 (4th Cir. 1991) (stating written findings of historical fact by the state court are presumed to be correct and entitled to deference unless shown to be erroneous). Petitioner took funds that did not belong to him and were entrusted to him only because he was a pastor, and he sent the funds to the Philippines for his personal benefit. Petitioner schemed to keep Diocese and parish employees and volunteers from discovering his conversion of others' charitable donations.

Petitioner's criminal acts, even if performed under the guise of ecclesiastical duties, are not shielded by the First Amendment because petitioner's prosecution did not relate to any ecclesiastical dispute, faith, or doctrine. A conviction for embezzlement in Virginia requires the Commonwealth to prove that a defendant was "entrusted with possession of another's personalty" and "convert[ed] such property to his own use or benefit[.]" Smith v. Commonwealth, 222 Va. 646, 649, 283 S.E.2d 209, 210 (1981) (citing Va. Code § 18.2-111). The Diocese and parishioners entrusted petitioner with money for church use, which he stole to buy himself real estate in the Philippines. No analysis of Canon law or an ecclesiastical issue was necessary to find petitioner guilty of embezzling. Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

7

## B.

A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). See 28 U.S.C. § 2254(b) (mandating exhaustion). The purpose of exhaustion is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 846 (1999). The exhaustion requirement is satisfied by finding that the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citing Picard v. Connor, 404 U. S. 270, 275-76 (1971)). Therefore, a petitioner must present both the same argument and factual support to the state court before presenting the same claim to a federal court. Anderson v. Harless, 459 U. S. 4, 6-7 (1982).

Petitioner's first claim herein mirrors his first assignment of error to the Supreme Court of Virginia, i.e., that the "Court of Appeals erred in affirming the trial court's denial of Rodis' motion to dismiss th[e] prosecution on the grounds that it violated the First Amendment, specifically the separation of church and state." (Pet'r's Pet. for Appeal (no. 12-3) 2-3.) To be sure, petitioner's second claim, challenging the jurisdiction of a Virginia court to convict a Catholic priest for stealing church monies, is related to claim (1) as all of petitioner's claims assert that such a theft is beyond the purview of a state court. To the extent that petitioner's jurisdictional claim may be viewed as raising issues separate and apart from the First Amendment claim presented to the Supreme Court of Virginia, such as whether his prosecution

8

impinges the sovereignty of the Vatican, petitioner may not now present them for federal review as they are procedurally barred. See Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) ("[F]ailure to appeal claims disposed of by a state habeas trial court constitutes a procedural bar to further federal review of such claims."). Thus, any aspect of petitioner's claims that do not fall within the ambit of the First Amendment claim raised before the Supreme Court of Virginia is treated as exhausted because it would be procedurally barred under state law if petitioner returned to state court to present it. See Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (stating that a federal habeas claim may be procedurally defaulted if a state court can refuse to consider a claim's merits because of an adequate and independent state procedural rule); Weeks v. Angelone, 176 F.3d 249, 273 (4th Cir. 1999) (noting that Virginia's statute of limitations for habeas corpus petitions constitutes an adequate and independent state law ground).

Virginia Code § 8.01-654(A)(2) is the statute of limitations for Virginia habeas corpus petitions. The statute allows Virginia courts to consider state habeas petitions filed within two years from the entry of the criminal judgment or one year from the final disposition of direct appeals in Virginia courts, whichever date is later. Petitioner is now time barred from filing a state habeas petition because the statute of limitations expired for him on November 17, 2011.[3]

Thus, petitioner's instant federal petition presents a mix of exhausted and "technically" exhausted claims. See Baker, 220 F.3d at 288 (describing "technically" exhausted claims). These omitted claims are simultaneously exhausted and procedurally defaulted for federal habeas

---

[3] The possible limitations periods were two years from January 14, 2009, the date the Circuit Court entered his criminal judgment, which equals January 14, 2011, or one year from November 17, 2010, the date the Supreme Court of Virginia refused his direct appeal, which equals November 17, 2011. Va. Code § 8.01-654(A)(2). The later of these two dates, November 17, 2011, is the end of petitioner's state limitations period.

9

review.[4]  See Rhines v. Weber, 544 U.S. 269, 271-72 (2005) (discussing good cause to excuse a failure to exhaust).

A court may not review a procedurally defaulted claim absent a showing of a fundamental miscarriage of justice or cause and prejudice.  Harris v. Reed, 489 U.S. 255, 262 (1989).  The existence of cause ordinarily turns upon a showing of ineffective assistance of counsel, a factor external to the defense that impeded compliance with the state procedural rule, or the novelty of the claim.  Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990).  A court does not need to consider the issue of prejudice in the absence of cause.  Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Petitioner does not present any reason to excuse his procedural default.  Accordingly, petitioner procedurally defaulted his second claim to the extent that it is different from the First Amendment claim he presented to the Supreme Court of Virginia in his first assignment of error.

## III.

For the foregoing reasons, the court grants respondents' motion to dismiss and dismisses petitioner's petition for a writ of habeas corpus.  Based upon the court's finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

---

[4] Slayton v. Parrigan, 215 Va. 27, 305 S.E.2d 680 (1974), also precludes petitioner from presenting any new non-jurisdictional claim via a state petition for a writ of habeas corpus.  Slayton holds that a habeas petitioner procedurally defaults a non-jurisdictional habeas claim when that claim could have been presented at trial and on appeal but was not.  Thus, Slayton prohibits state habeas review of petitioner's claims that involve issues other than the First Amendment claim raised before the Supreme Court of Virginia because petitioner could have argued these

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel for respondents.

Entered: March 28, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

issues before trial or during direct appeal but did not. See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (noting that Slayton constitutes an adequate and independent state law ground).